**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DJUAN JAMAR COUSINS,

      Petitioner,                                 Civil No. 2:13-CV-10872
                                                     HONORABLE PAUL D. BORMAN
v.                                                  UNITED STATES DISTRICT JUDGE

STEVEN RIVARD,

      Respondent.
_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

      Djuan Jamar Cousins, ("petitioner"), presently confined at the Alger Correctional Facility in Munising, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, petitioner challenges his conviction for armed robbery, M.C.L.A. § 750.529, felon in possession of a firearm, M.C.L.A. § 750.2224f, and felony-firearm, M.C.L.A. § 750.227b. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. BACKGROUND**

      Petitioner was charged with one count each of armed robbery, assault with intent to rob while armed, assault with a dangerous weapon (felonious assault), felon in possession of a firearm, and felony-firearm. Following a jury trial, petitioner was convicted of one count of armed robbery, one count of felon in possession of a firearm, and felony-firearm. Petitioner was acquitted of the remaining charges.

      Kevin Boyd testified that while walking south on Gratiot, near Peter Hunt Street, five

1

men approached him. One man wore a tan jogging suit and the other four men wore dark clothing. The man in the tan jogging suit asked, "What you got, what you got?" Boyd asked the man to repeat himself. He again said, "What you got, what you got?" (Tr. 9/14/10, pp. 155-158.).

Another man, who Boyd identified at trial as petitioner, then lifted his black hooded sweatshirt and showed Boyd a gun in his waistband. Boyd testified that he responded, "I ain't got anything, I ain't got anything." Boyd walked through the group of men to cross Gratiot, passing by petitioner who again flashed the gun at him. Boyd tried to distract the men by claiming the police had arrived, and ran past the group of men. Boyd then called the police. (*Id.*, pp. 156, 158-166.).

At this time, Dewone Hudson was waiting at the bus stop at Gratiot and Harper. He saw two men approach. One man, whom he identified at trial as petitioner, wore a black hooded sweatshirt and another man wore a brown shirt and light brown pants. (*Id.*, pp. 102-103, 119.). When they were about two feet from Hudson, the man in the brown clothing asked Hudson what he had in his pocket. (*Id.*, pp. 120-121, 102-104.). Hudson testified that petitioner then pulled a silver gun with a black handle halfway out of the right side of his waistband. (*Id.*, pp. 104, 106.). Afraid that petitioner would shoot him, Hudson gave the men his hat, shoes, phone, phone charger, and wallet containing cash. The men then told Hudson to turn around and walk in the opposite direction, as they ran back across Gratiot. (*Id.*, pp. 106-107.).

Maxine Burney pulled into a grocery store parking lot at Gratiot and Harper at about 7:45 p.m. and observed five young men. Four of the men wore dark clothing and one wore cream or tan. Burney watched as two of the men separated from the group to cross the street to the bus

stop. (*Id.*, pp. 139-143.). When Burney saw Hudson, she drove toward him and learned he had been robbed. (*Id.*, p. 150.). She called the police. The police interviewed Hudson, Burney, and Boyd, who was in the parking lot of the grocery store. (*Id.*, pp. 108-109, 112, 151, 164-165.). The police pursued the men and later found petitioner wearing a baseball cap that matched the description of the stolen cap. (Tr. 9/15/10, pp. 8-10.).

At trial, Boyd described petitioner as "dark-complected" or "dark to me." (Tr. 9/14/10, p. 170.). Similarly, Hudson had described petitioner as "very dark" and "black," but at trial, Hudson testified that petitioner did not have a dark complexion. (*Id.*, pp. 125-126; 134-135.). Furthermore, neither Boyd nor Hudson recalled that petitioner had facial hair, a "unibrow," or a scar on his face, which he had at trial. (*Id.*, pp. 170-171.).

Petitioner's trial counsel called Officer Scott Spencer to testify about his recollection of petitioner's appearance at the time of the robbery. Initially, Spencer could not recall petitioner's appearance. Trial counsel asked if Spencer completed a form identifying petitioner's characteristics. (Tr. 9/15/10, pp. 56-57.). The trial court instructed the attorneys to approach the bench for a conference off the record, at which point trial counsel was presented with a photograph which was then utilized to refresh Spencer's memory. (*Id.*). After reviewing the photograph provided to defense counsel, Spencer's recollection of petitioner's appearance at the time of the robbery was refreshed. He recalled that petitioner had a beard and mustache. He also described petitioner as medium-complected. (*Id.*, pp. 58-89.). Spencer could not see petitioner's scar in the photograph and he testified that petitioner's eyebrows were more separated at the time of the robbery than at trial. Spencer opined that petitioner's face looked slightly different at trial than it had when he first saw petitioner. (*Id.*, pp. 60-61.).

3

In addition to these facts, this Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Long v. Stovall,* 450 F. Supp. 2d 746, 749 (E.D. Mich. 2006):

> Defense counsel did not review the arrest photograph before trial, and counsel admitted that if he had reviewed it, he would not have called Sergeant Scott Spencer as a defense witness. Spencer's testimony in some ways undermined defendant's theme at trial that the victims' identifications of defendant were unreliable. Although the reasons for counsel's failure to review the arrest photograph are unclear, we will assume, arguendo, that the failure to review it fell below an objective standard of reasonableness.
> ******************************************************************
> In this case, however, defense counsel used Spencer's testimony and the arrest photograph to support his closing argument, during which he argued extensively that defendant was misidentified. For example, counsel emphasized that in the photograph, the perpetrator had a full beard, whereas two witnesses did not mention a beard in their descriptions of the perpetrator. Defense counsel's actions or inactions did not deprive defendant of his theory of defense that the victims' identifications of defendant were unreliable.
> ******************************************************************
> However, Spencer did not provide the only substantive evidence of defendant's guilt. Kevin Boyd was 100 percent sure of his in-court identification of defendant and Dewone Hudson was 65 to 75 percent sure of his in-court identification, and Boyd and Hudson each identified the same handgun as the gun defendant used during the criminal incidents. Moreover, defendant was wearing Hudson's hat and he possessed Hudson's cellular telephone during a police chase, and he demonstrated consciousness of guilt by running from the police and by disposing of a gun and Hudson's items during the chase. Under all the circumstances, defendant has not shown a reasonable probability that a different outcome would have resulted if defense counsel had reviewed the arrest photograph before trial, and thus defendant's ineffective assistance claim fails.

*People v. Cousins*, No. 300715, 2012 WL 593578, at *1-2 (Mich.Ct.App. Feb. 23, 2012).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 492 Mich. 855, 817 N.W.2d 84 (2012).

Petitioner now seeks the issuance of a writ of habeas corpus.

4

>Mr. Cousins was denied the sixth amendment right to the effective assistance of counsel in trial through counsel's gaffe in calling (sic) witness detrimental to the defense.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>>(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system."

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-103 (citing

*Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

### III. DISCUSSION

Petitioner alleges that trial counsel was ineffective when counsel failed to review the arrest photograph of petitioner and then questioned a witness on the basis of that photograph, eliciting harmful testimony.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371

(2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:
>
> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.
>
> *Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 562 U.S. at 107.

Trial counsel conceded that in hindsight he would not have called Spencer as a defense witness. Spencer could not recall petitioner's appearance upon arrest. Petitioner alleges that the arrest photograph used to refresh Spencer's memory was detrimental to his defense. However, trial counsel did make use of Spencer's testimony and the photograph during his closing argument. Had the photograph been detrimental to his defense, as alleged by petitioner, trial counsel would not have used the photograph during closing argument to argue extensively that petitioner was misidentified.

Furthermore, any deficiency by counsel in opening the door in connection with petitioner's identity did not prejudice petitioner, so as to support an ineffective assistance of counsel claim, in light of the fact that this evidence was neither the strongest evidence or the

only evidence of petitioner's guilt to the charged offense. *See Bridges v. Cason*, 198 F. App'x. 491, 494-95 (6th Cir. 2006); *see also Salem v. Yukins*, 414 F. Supp. 2d 687, 699 (E.D. Mich. 2006)(defense counsel's opening the door to questions regarding the habeas petitioner's prior drug conviction did not prejudice petitioner, in light of the overwhelming evidence of her guilt). Hudson testified that petitioner displayed a gun and robbed him of his property, another witness testified that just prior to the incident, petitioner attempted to rob him. A police officer testified that petitioner was wearing the victim's cap when he was arrested. "*[S]trickland* acknowledges that conclusions supported by other properly admitted evidence may be unaffected by the introduction of evidence that, although improperly admitted, is cumulative." *Bridges*, 198 F. App'x. at 495. Even assuming that production of the arrest photograph was detrimental to petitioner's defense, the photograph was merely cumulative evidence pertaining to petitioner's identity. Therefore, petitioner was not prejudiced by the fact that counsel opened the door to testimony in connection with the photograph.

"[A] defense counsel's elicitation of damaging testimony does not itself rise to the level of ineffective assistance." *Galloway v. U.S.*, 187 F. App'x. 507, 510 (6th Cir. 2006), (citing *Campbell v. U.S.*, 364 F.3d 727, 734 (6th Cir.2004); *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002)). *See also Urban v. Ohio Adult Parole Authority*, 116 F. App'x. 617, 622 (6th Cir. 2004) (holding that defense counsel's cross-examination of prosecution witness, which eliminated incriminating testimony, was not ineffective because it was plainly an attempt by counsel to portray witness as biased).

The photograph was merely cumulative evidence in connection with the issue of petitioner's identity. Boyd testified that he was 100% positive that it was petitioner who

attempted to rob him. Hudson testified that he was 65 to 75 percent sure of his in-court identification of petitioner as the individual who robbed him at the bus stop. Furthermore, a third witness testified that she witnessed the robbery, assisted the victim and called the police. Due to the overwhelming evidence against petitioner, petitioner's arrest photograph had no bearing on his conviction to warrant a finding that trial counsel was ineffective by failing to investigate the photograph before the day of trial. Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim.

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDonnell*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. fol. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claim to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV. CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

        s/Paul D. Borman
        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE

Dated: May 7, 2015

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 7, 2015.

        s/Deborah Tofil
        Case Manager